No. 97-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 142

IN THE MATTER OF M.J.W.,

A Youth in Need of Care.

APPEAL FROM:   District Court of the Fourth Judicial District,
                In and for the County of Mineral,
           The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kirk D. Krutilla, Attorney at Law, Superior, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Stephen C.
Bullock, Assistant Attorney General, Helena, Montana

M. Shaun Donovan, Mineral County Attorney, Superior,
Montana

Submitted on Briefs: December 23, 1997

Decided: June 9, 1988
Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1   In its findings of fact, conclusions of law and order, the Fourth Judicial
District Court, Mineral County, terminated the parental rights of Bonnie D.
(Bonnie) and Joe W. (Joe) to M.J.W.  Joe appeals, contending that certain of
the court's findings of fact are clearly erroneous and that the District Court

incorrectly interpreted the law.  We affirm.

¶2    The dispositive issue on appeal is whether the District Court erred in terminating Joe's parental rights.

BACKGROUND

¶3    The Department of Public Health and Human Services (Department), formerly the Department of Family Services, became involved with Bonnie prior to M.J.W.'s birth due to concern about Bonnie's parenting capabilities. M.J.W. was born on September 9, 1992, and lived with Bonnie for most of the first eighteen months of her life.  Throughout that period, Joe saw M.J.W. only intermittently.  Although Joe and Bonnie lived together for short periods before and after M.J.W.'s birth, they never married.

¶4    The Department removed M.J.W. from Bonnie's care on several occasions prior to February 25, 1994.  Joe had physical custody of M.J.W. briefly, but she was removed by the Department when Joe went on a rafting trip leaving M.J.W. in the care of a fifteen-year-old babysitter.  The Department subsequently returned M.J.W. to Bonnie's care.

¶5    M.J.W. was placed in foster care again on February 25, 1994, at age eighteen months, when Bonnie was jailed as a result of her third conviction for driving under the influence of alcohol and for resisting arrest, driving without a valid driver's license, and child endangerment.  The Department petitioned for temporary investigative authority and protective services for M.J.W. shortly thereafter.  The District Court granted the petition and vested specific rights in the Department, including the right to require Joe and Bonnie to attend individual counseling.  The court also ordered M.J.W.'s parents to comply with the order or appear on March 16, 1994, to show cause why they had not done so.  Neither parent complied with the order or appeared at the show cause hearing.  The Department moved for temporary legal custody of M.J.W. for six months and for approval of proposed treatment plans for Bonnie and Joe.  The District Court granted that motion on July 27, 1995, and ordered the parents to complete the goals listed in their treatment plans.

¶6    The Department moved to terminate the parental rights of both Bonnie and Joe on September 12, 1996, alleging alternative statutory grounds.  The District Court appointed counsel for both parents and an evidentiary hearing on the motion was held on April 10, 1997.  Thereafter, the District Court issued its findings of fact, conclusions of law and order terminating the parental rights of both parents and requiring the Department to establish a plan for permanent placement of M.J.W.  Joe appeals.

STANDARD OF REVIEW

¶7    In a termination of parental rights case, we review a district court's findings of fact to determine whether they are clearly erroneous.  Matter of W.Z. (Mont. 1997), 946 P.2d 125, 128, 54 St.Rep. 1019, 1020 (citations omitted).  Findings of fact are clearly erroneous " 'if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made.'" In re Marriage of Nevin (1997), 284 Mont. 468, 472, 945 P.2d 58, 61

(citation omitted). As a general rule, we review a district court's conclusions of law to determine if they are correct; however, we review conclusions involving the exercise of discretion, such as a determination that a child has been abused or neglected, under the abuse of discretion standard. Matter of B.C. (1997), 283 Mont. 423, 426, 942 P.2d 106, 108 (citation omitted).

## DISCUSSION

¶8    Did the District Court err in terminating Joe's parental rights?

¶9    A number of statutory bases exist for a court's termination of parental rights in Montana. In terminating Joe's parental rights in the present case, the District Court concluded that termination was appropriate under §§ 41-3-609(1)(b), 41-3-609(1)(c), 41-3-609(1)(d), 41-3-410(1), and 41-3-410(2), MCA (1995).

¶10   Joe argues that the District Court erred in terminating his parental rights pursuant to § 41-3-609(1)(c), MCA (1995), because its findings relating to his abuse and neglect of M.J.W. were based on an inadmissible hearsay report and, therefore, the threshold determination for termination under that statute-- namely, that M.J.W. was an adjudicated youth in need of care--is lacking. The Department responds that the youth in need of care designation was made at an earlier stage of the proceedings and, in that regard, directs our attention to the District Court's conclusion that M.J.W. "was properly designated by prior Order of this Court as a Youth in Need of Care as that term is defined by section 41-3-102(17) M.C.A." Therefore, according to the Department, the foundational determination was present and the District Court correctly terminated Joe's parental rights pursuant to § 41-3-609(1)(c), MCA (1995). We disagree.

¶11   A district court may terminate the parent-child legal relationship under § 41-3-609(1)(c), MCA (1995), upon finding that the child has been adjudicated a youth in need of care, the parent has not complied with an appropriate court-approved treatment plan or the treatment plan was unsuccessful, and the conduct or condition of the parent rendering him unfit is unlikely to change within a reasonable time. Thus, the threshold requirement for termination under § 41-3-609(1)(c), MCA (1995), is the youth in need of care adjudication. Absent such an adjudication, parental rights cannot be terminated pursuant to that statute.

¶12   Here, the record does not support the District Court's conclusion that it previously had designated M.J.W. a youth in need of care. In its order granting the Department's petition for temporary investigative authority and protective services, the District Court found that "there is probable cause to believe that [M.J.W.] is abused or neglected or in danger of being abused or neglected. . . ." Clearly, a "probable cause" finding does not constitute a finding that M.J.W. was abused or neglected. The District Court also found that M.J.W. was removed from her mother's home because she was in immediate or apparent danger of harm. This finding arguably is sufficient to meet the definition of child abuse or neglect contained in § 41-3-102(5), MCA (1995). It is not sufficient, however, to constitute an adjudication that M.J.W. was a youth in need of care. That adjudication can be made only after the

adjudicatory hearing mandated by § 41-3-404, MCA (1995). No such hearing was held prior to the District Court's March 9, 1994, order for protective services. Indeed, that order clearly reflects that it was based solely on the Department's petition and accompanying report.

¶13 The only other substantive District Court order of record prior to the Department's petition to terminate parental rights was entered on July 27, 1995. In that order, the District Court awarded temporary legal custody of M.J.W. to the Department, approved treatment plans for Joe and Bonnie and ordered them to complete the goals in their treatment plans. Nothing in that order addresses abuse or neglect or adjudicates M.J.W. a youth in need of care. Moreover, as was the case with the District Court's March 9, 1994, order, the statutorily required adjudicatory hearing prior to a youth in need of care designation was not held before the July 27, 1995, order.

¶14 The record before us is devoid of an order adjudicating M.J.W. a youth in need of care. As a result, we hold that the District Court erred in concluding it previously had designated M.J.W. a youth in need of care and in terminating Joe's parental rights pursuant to § 41-3-609(1)(c), MCA (1995).

¶15 As set forth above, however, the District Court terminated Joe's parental rights on five different statutory grounds. In this regard, the Department contends that termination was proper under § 41-3-609(1)(b), MCA (1995), which permits a district court to terminate parental rights upon a finding that the parent abandoned the child as defined in § 41-3-102(7)(e), MCA (1995).

¶16 To terminate the parent-child legal relationship, a district court must determine that one of the criteria in § 41-3-609(1), MCA, exists. Matter of D.H. (1994), 264 Mont. 521, 526, 872 P.2d 803, 806. Section 41-3-609(1)(b), MCA (1995), provides that a finding of abandonment, as defined in § 41-3-102(7)(e), MCA (1995), is a criterion for terminating the parent-child legal relationship. Under § 41-3-102(7)(e), MCA (1995), abandonment occurs when the parent or other person responsible for the child's welfare

> abandons the child by leaving the child under circumstances that make reasonable the belief that the parent or other person does not intend to resume care of the child in the future or willfully surrenders physical custody for a period of 6 months and during that period does not manifest to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child. . . .

¶17 The District Court addressed abandonment in its Finding of Fact No. 5 and specifically found as follows:

> During the approximately eighteen months between the child's birth and her long term foster care placement, the natural father had intermittent contact with the child and her mother on a basis sufficient to make a general assessment concerning the care being given the child. Since her placement in foster care on February 25, 1994 the child has had minimal contact with [Joe] as specified in Petitioner's Exhibit 2, as well as further contact neither authorized nor approved by the Department. The father has neglected to take advantage of opportunities to visit his child during the past three years and at

present [M.J.W.] identifies him as one of several transient father figures. [Joe's] failure to parent his daughter for any extended period of time, including his failure to visit her regularly while in foster care, made reasonable the belief by the Department that he does not intend to resume care of the child in the future.

Joe challenges only the first sentence of the finding, contending that it was based solely on the testimony of Nancy Smith, a social worker who did not have personal knowledge of his relationship with M.J.W. prior to February 25, 1994, when M.J.W. was again placed in foster care. Because the findings pertinent to abandonment relate to the three-year period beginning February 25, 1994, however, we need not address whether the challenged portion of the finding is clearly erroneous.

¶18 Joe does not challenge the District Court's specific findings or conclusion relating to abandonment. It is well settled that a district court's decision is presumed correct. In re Marriage of Clyatt (1994), 267 Mont. 119, 122, 882 P.2d 503, 505 (citation omitted). It is equally well settled that an appellant bears the burden of establishing error by the trial court. See, e.g., Small v. Good (1997), 284 Mont. 159, 163, 943 P.2d 1258, 1260; Rieman v. Anderson (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1127. Joe having failed to challenge the District Court's abandonment determinations and, as a consequence, necessarily having failed to meet his burden of proving error, we hold that the District Court's findings of fact regarding abandonment are not clearly erroneous and that the District Court did not abuse its discretion in concluding that Joe abandoned M.J.W.

¶19 Finally, Joe correctly contends that a determination that he abused or neglected M.J.W. is required before the District Court can terminate his parental rights. Section 41-3-602, MCA, states that "[t]he termination of the parent-child legal relationship provided for in this part is to be used in those situations when there is a determination that a child is abused or neglected, as defined in 41-3-102." See also In re A.E. (1992), 255 Mont. 56, 61-62, 840 P.2d 572, 576. Joe is incorrect in contending, however, that no such abuse or neglect determination was made in this case.

¶20 Section 41-3-102(2), MCA (1995), defines "abused or neglected" as "the state or condition of a child who has suffered child abuse or neglect." Section 41-3-102(5)(a), MCA

(1995), then defines "child abuse or neglect," in part, as harm to a child's health or welfare.

Finally, "harm to a child's welfare" is the harm which occurs when one of the statutory circumstances set forth in § 41-3-102(7), MCA (1995), exists. One of those statutory circumstances is abandonment. Section 41-2-102(7)(e), MCA (1995). As discussed above, the District Court found that Joe had abandoned M.J.W. Pursuant to the referenced statutes, therefore, the District Court implicitly made a determination of abuse or neglect.

¶21 We have not previously held that abandonment falls within the definition of "abuse or neglect;" however, we have implicitly recognized that it does. In Matter of D. H., 264 Mont. at 525-26, 872 P.2d at 806, for example, the district court made an abuse and neglect determination based on a finding that the mother had abandoned her children. The mother challenged the abuse and neglect determination and we limited our analysis to whether the district court abused its discretion in determining the mother had abandoned her children. Matter of D.H., 264 Mont. at 525-26, 872 P.2d at 806. After reviewing the record, we concluded that the district court had not abused its discretion in determining that the mother had abandoned her children and that they were abused and neglected. Matter of D.H., 264 Mont. at 527, 872 P.2d at 807. While we did not specifically address the statutory requirement for a determination of abuse or neglect in Matter of D.H., our conclusion implicitly recognized that abandonment was the legal equivalent of abuse or neglect.

¶22 Here, we conclude that the District Court's determination that Joe abandoned M. J.W. satisfies the § 41-3-602, MCA, requirement of a determination that the child has been abused or neglected as defined in § 41-3-102, MCA. We hold, therefore, that the District Court did not err in terminating Joe's parental rights pursuant to § 41-3-601(1)(b), MCA (1995).

¶23 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ WILLIAM E. HUNT, SR.