No. 00-073

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 204N

IN THE MATTER OF THE

PARENTAL RIGHTS TO BABY GIRL Y.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Julia Weddle Swingley, Attorney at Law, Helena, Montana

For Respondent:

William P. Driscoll; Gough, Shanahan, Johnson & Waterman,

Helena, Montana

Submitted on Briefs: May 25, 2000

Decided: July 25, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Brett Landon (Brett) appeals from the Findings of Fact, Conclusions of Law and Order entered by the First Judicial District Court, Lewis and Clark County, which terminated his parental rights to Baby Girl Y., and granted legal custody of Baby Girl Y. and exclusive authority to consent to her adoption to Catholic Social Services for Montana, Inc. (CSSM). We affirm.

¶3 The issue on appeal, as stated by Brett, is whether the District Court's decision to terminate his parental rights to Baby Girl Y. was based on a correct interpretation of the law and on findings of fact which were not clearly erroneous.

## BACKGROUND

¶4 Baby Girl Y.'s natural parents are Ashlee Yeager (Ashlee) and Brett, both of whom were patients at Warm Springs State Hospital (Warm Springs) when she was conceived. Ashlee's pregnancy was high-risk because Baby Girl Y. had a serious medical problem and Ashlee sought pregnancy counseling from Sister Marie Noel Bruch (Sister Noel) of CSSM prior to giving birth on February 14, 1999. Ashlee told Sister Noel that she wanted to relinquish her parental rights and, because she was afraid of Brett, wanted to relinquish his rights without notifying him. Sister Noel advised her the baby could not be placed for adoption so long as Brett retained legal rights to the child.

¶5 Sister Noel visited Brett at Warm Springs soon after Baby Girl Y.'s birth and advised him of her medical conditions, which required major surgery four days after birth. Brett said he wished to raise the baby. Sister Noel found Brett delusional in response to the baby's plight and he repeatedly expressed interest in an ongoing relationship with Ashlee and in their raising Baby Girl Y. together. On a subsequent visit, Sister Noel delivered Brett a letter from Ashlee indicating she wanted no further or future relationship with him and urging him to give up his rights to the baby.

¶6 Ashlee relinquished her parental rights to Baby Girl Y. on March 11, 1999. The following month, Sister Noel took Baby Girl Y. to visit Brett at Warm Springs even though he had not requested any visit or contact. He did not request any further visits or contact with the child and none occurred. Brett's primary focus in subsequent conversations with Sister Noel was on contacting and/or maintaining a relationship with Ashlee.

¶7 CSSM petitioned for termination of Brett's parental rights and commencement of adoption proceedings on April 29, 1999, and the District Court appointed counsel to represent him. Brett was released from Warm Springs on May 27, 1999, and moved immediately to Everett, Washington, where he found intermittent work through his labor union. By the time of the October 4, 1999, hearing on CSSM's petition, Brett had neither permanent employment nor a permanent residence.

¶8 Sister Noel and Brett testified at the hearing. The parties stipulated to taking the deposition of Dr. Tatjana Caddell (Dr. Caddell), a staff psychiatrist at Warm Springs, and the deposition was duly taken and filed as part of the record. The District Court subsequently entered its Findings of Fact, Conclusions of Law and Order which determined that Brett was not fit to assume legal and physical custody of Baby Girl Y. and that failing to terminate his rights was not in her best interests and, indeed, would be detrimental to her. The court terminated Brett's parental rights and gave CSSM custody of Baby Girl Y. and exclusive authority to consent to her adoption. Brett appeals.

## STANDARDS OF REVIEW

¶9 In reviewing a district court's decision to terminate parental rights, we determine whether the court correctly interpreted the law and whether its findings of fact are clearly erroneous. *In re E.W.,* 1998 MT 135, ¶ 9, 289 Mont. 190, ¶ 9, 959 P.2d 951, ¶ 9 (citation omitted). The court's decision is presumed to be correct. *In re E.W.*, ¶ 14 (citations omitted). Moreover, it is well settled that the appellant bears the burden of establishing error. *Matter of M.J.W.*, 1998 MT 142, ¶ 18, 289 Mont. 232, ¶ 18, 961 P.2d 105, ¶ 18 (citations omitted).

## DISCUSSION

¶10 **In terminating Brett's parental rights to Baby Girl Y., did the District Court err in interpreting the law and were its findings of fact clearly erroneous?**

¶11 We address the subissues in Brett's sole issue on appeal in reverse order.

¶12 Having raised the question of whether the District Court's findings of fact are clearly erroneous, Brett does not specifically challenge a single such finding. Instead, he merely reiterates the evidence he presented on his own behalf which conflicted with, or contradicted, that presented by CSSM through Sister Noel and Dr. Caddell. Our standard of review regarding findings of fact is not whether the evidence before the trial court is in conflict, however. Our standard is whether the court's findings are clearly erroneous, and the first part of that test is whether substantial evidence supports the findings. *See In re E. W.,* ¶ 10 (citations omitted).

¶13 Here, the record reflects that the District Court's findings of fact are supported by substantial evidence. Moreover, Brett advances no argument that the court misapprehended the effect of the evidence or that, on this record, we should be left with a definite and firm conviction that a mistake has occurred. *See In re E.W.*, ¶ 10 (citations omitted). We conclude that Brett has failed to meet his burden of establishing error in the District Court's findings. *See Matter of M.J.W.*, ¶ 18 (citations omitted).

¶14 Brett's statement of the issue also suggests that the District Court incorrectly interpreted the law. Again, however, Brett's position in this regard remains essentially undeveloped. While he cites to several statutes which he contends were incorrectly applied, he presents no substantive legal analysis and fails to advance any authorities which support his position, as required by Rule 23(a)(4), M.R.App.P. Therefore, we conclude that Brett has failed to meet his burden of establishing legal error by the District Court.

¶15 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART