No. 00-078

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 205

IN RE THE MATTER OF THE CUSTODY OF

AND THE PARENTAL RIGHTS OF T.Z. and

J.Z.,

Youths in Need of Care.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Broadwater,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Julia Weddle Swingley, Attorney at Law, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General; Helena, Montana

John T. Flynn, Broadwater County Attorney, Townsend, Montana

Charles E. Petaja, Attorney at Law, Helena, Montana (Attorney for

(Youths in Need of Care and Guardian Ad Liem)

Submitted on Briefs: May 25, 2000

Decided: August 1, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the court.

¶1 The Department of Public Health and Human Services (DPHHS) petitioned the District Court for the First Judicial District in Broadwater County to terminate the parental rights of Christina Osterloth or, alternatively, to grant long-term legal custody of Christina's children, T.Z. and J.Z., to DPHHS with the right to assign guardianship. The District Court granted DPHHS long-term legal custody of T.Z. and J.Z. with the right to assign guardianship to the children's grandmother. Christina appeals the District Court's order. We affirm the order of the District Court.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err when it failed to make specific findings to support its award of long-term custody of T.Z. and J.Z. to DPHHS with the right to assign custody to the children's grandmother?

¶4 2. Did the District Court err by deciding to award long-term legal custody without requiring a separate petition limited to that issue?

## FACTUAL BACKGROUND

¶5 Christina Osterloth is the mother of two children, T.Z. and J.Z. T.Z. was born in March 1985 and J.Z. was born in April 1986. The children's father is deceased.

¶6 On November 1, 1996, the District Court found that T.Z. and J.Z. were youths in need of care, and granted the Broadwater County Department of Health and Human Services temporary custody of the children. Between 1996 and the time of this appeal, T.Z. and J.Z. have lived intermittently with both their mother and their grandmother, Phyllis Potter, under the supervision of DPHHS.

¶7 On August 19, 1999, the State petitioned the District Court for an order terminating the parental rights of Christina, or in the alterative, an order granting long-term custody of the children to DPHHS with the right to assign guardianship to Potter.

¶8 Following a hearing, the District Court filed its findings of fact, conclusions of law, and order on November 3, 1999. The District Court did not terminate Christina's parental rights; rather, the court granted DPHHS long-term custody with the right to assign custody to Potter. The District Court found that:

> [Christina] is currently under a ten year Department of Corrections supervised sentence as of July 14, 1999. Christina has two felony drug convictions on her record and is currently attending Alcoholics Anonymous (AA) meetings.
>
> . . . .
>
> In October 1996, a social worker for the Department of Family Services found [J.Z.] sitting in Christina's front yard. [J.Z.] indicated that his mother had locked up the house and was on an extended trip with her boyfriend. The children were left to fend for themselves. The children were under the "supervision" of [a] 17-year-old male who had pending drug charges against him in Helena, Montana. The social worker noted that the house was filthy, with beer cans strewn around and that the children had not attended school that week.
>
> . . . .
>
> It clearly appears to this Court that Christina has failed in her treatment plan. On February 11, 1999, she failed a drug test at St. Peter's Community Hospital. . . . It should be noted that Christina did pass a subsequent drug screen on July 6, 1999.
>
> . . . .
>
> The Court must also note that, of the four people residing in Christina's house in October 1996, all four of them have been since convicted of felonies.
>
> The Court notes that the past is the best predictor of the future. Christina has been given many chances to straighten herself out and retain custody of her children.

However, she is unable to focus on anything other than her own needs, be they emotional or chemical. She was warned by Wendy Cook that this last treatment plan was her last chance but despite that she has failed to comply with the treatment plan and has continued to attempt to sabotage her children's stability and peace of mind. The Court has no trouble at all in entering a finding that Christina is unable to distinguish between the children's best interests and her own perceived interests.

The District Court also found that since J.Z. began living with Potter he became involved in the community and improved in school; and that J.Z. expressed a desire to continue living with Potter. With respect to T.Z. the District Court found that, although Christina was overtly manipulating T.Z. to resist placement with Potter, T.Z. improved in school and became involved in the community. The District Court then stated:

> The Court finds that the continuation of the parent/child legal relationship will likely result in continued abuse or neglect if the children are returned to Christina, and that the conduct and condition of Christina renders her unfit, unable and unwilling to give the children adequate parental care.

Nevertheless, the District Court did find that "it would be in the best interest of the children if their mother were allowed to visit with them, but only as directed and determined by the Department of Public Health and Human Services."

¶9 Based on these findings the District Court granted DPHHS long-term legal custody of J. Z. and T.Z. The District Court also granted DPHHS the right to assign guardianship of J.Z. and T.Z. to Potter. Christina appeals.

## STANDARD OF REVIEW

¶10 We review a district court's conclusions of law to determine whether they are correct. *In re J.N. and A.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11. We review a district court's findings of fact to determine whether the court's findings are clearly erroneous. *In re J.N.*, ¶ 11. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re J.N.*, ¶ 11.

## ISSUE 1

¶11 Were the District Court's findings sufficiently specific to support its award of long-term custody of T.Z. and J.Z. to DPHHS with the right to assign custody to the children's grandmother?

¶12 Christina contends that when the District Court granted DPHHS long-term legal custody, it did so based on evidence offered in support of the petition to terminate parental rights and that there was insufficient evidence to support long-term custody. She argues that the District Court based its decision on law applicable to termination of her parental rights, not § 41-3-412, MCA, the statute for long-term custody.

¶13 The State responds that the youth in need of care statutes give the district court broad discretion to act in the children's best interest and to make certain that children who are unable to return to their parents do not remain in temporary foster care.

¶14 A natural parent's right to custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures. *In re J.N.*, ¶ 12. However, if the State follows fundamentally fair procedures, the State can divest a parent of custody. Section 41-3-406(5), MCA, provides in part:

> Before the expiration of the order for temporary legal custody, the county attorney, the attorney general, or an attorney hired by the county shall petition for one of the following:
>
> . . . .
>
> (b) termination of the parent-child legal relationship and either; [or]
>
> . . . .
>
> (c) long-term custody pursuant to 41-3-412;
>
> . . . .

The procedure for termination of the parent-child legal relationship is set forth in § 41-3-601, MCA, et. seq. The procedure for long-term custody is set forth in § 41-3-412, MCA, which provides in part:

(6) If the permanency plan hearing results in a finding that reunification of the child with the child's parent or guardian is not in the best interests of the child, *a subsequent petition filed* must be one of the following:

. . . .

(c) long-term custody of a child if the evidence demonstrates by a preponderance of the evidence, *which is reflected in specific findings by the court*, that:

(i) the child has an emotional or mental handicap that is so severe that the child cannot function in a family setting and the best interests of the child are served by placement in a residential or group setting;

(ii) the child is at least 16 years of age and is participating in an independent living program and that termination of parental rights is not in the best interests of the child;

(iii) the child's parent is incarcerated and circumstances, including placement of the child and continued, frequent contact with the parent, indicate that it would not be in the best interests of the child to terminate parental rights of that parent;

(iv) the child is in a group of siblings, at least one of whom meets the requirements of subsections (6)(c)(v)(A) through (6)(c)(v)(D), and the best interests of the child will be met by continued placement in the sibling group in long-term foster care; or

(v) the child is at least 12 years of age and meets the following criteria:

(A) the child has been adjudicated a youth in need of care;

(B) the department has made reasonable efforts to reunite the parent and child, further efforts by the department would likely be unproductive, and reunification of the child with the parent or guardian would be contrary to the best interests of the child;

(C) termination of parental rights to the child is not in the child's best interests; and

(D) the child has been in a placement in which the foster parent has committed to the long-term care and to a relationship with the child, and it is in the best interests

of the child to remain in that placement.

(Emphasis added.)

¶15 The narrow issue in this case is whether the District Court's findings were sufficiently specific pursuant to § 41-3-412(6)(c)(v), MCA. Christina does not contend that the District Court's findings are erroneous.

¶16 The District Court found that J.Z. and T.Z. were youths in need of care on November 1, 1996. The District Court found that DPHHS developed treatment plans for Christina; that Cook warned her that the last treatment plan was her last chance; and that "Christina has been given many chances to straighten herself out and retain custody of her children." The District Court also found that "continuation of the parent/child legal relationship will likely result in continued abuse or neglect if the children are returned to Christina, and that the conduct and condition of Christina renders her unfit, unable and unwilling to give the children adequate parental care." These findings are sufficiently specific with respect to § 41-3-412(6)(c)(v)(A) and (B), MCA, to satisfy the "specific findings" requirement of § 41-3-412(6)(c), MCA.

¶17 Although the District Court found that it was not in J.Z. and T.Z.'s best interest to live with Christina it found that "it would be in the best interest of the children if their mother were allowed to visit with them." This finding is sufficiently specific with respect to § 41-3-412(6)(c)(v)(C), MCA.

¶18 Finally, the District Court found that since J.Z. and T.Z. began living with Potter, they improved in school and became more socially involved. The District Court also found that Potter's home was thoroughly reviewed by the State of Idaho and that Potter is willing to act as the children's guardian. This finding is sufficiently specific with respect to § 41-3-412(6)(c)(v)(D), MCA. Accordingly, we hold the District Court's findings were sufficiently specific to support its award of long-term custody of T.Z. and J.Z. to DPHHS with the right to assign custody to the children's grandmother, Potter.

## ISSUE 2

¶19 Did the District Court err by deciding to award long-term legal custody without requiring a separate petition limited to that issue?

¶20 Christina contends that following the November 1999 hearing, the State failed to file a subsequent petition pursuant to § 41-3-412(6), MCA, and that she was, therefore, denied sufficient notice. However, the language of § 41-3-412(6), MCA, which states "a subsequent petition filed must be one of the following," must be read in conjunction with the language of § 41-3-412(1), MCA, which states "[t]he permanency plan hearing may be combined with a hearing that is required in other sections of this part."

¶21 In this case, since the permanency hearing was combined with the termination hearing, the petition for long-term legal custody was not filed subsequent to the November 29, 1999, hearing. The State's petition was for termination of parental rights or in the alternative, for long-term legal custody. Therefore, § 41-3-412(6), MCA, does not require that the State's petition for long-term legal custody be filed subsequent to the hearing. The State filed its petition for long-term legal custody of T.Z. and J.Z., which is permitted pursuant to § 41-3-412(c), MCA, at the same time that it filed its petition to terminate Christina's parental rights on August 19, 1999. The District Court held a combined hearing on November 29, 1999. Therefore, the alternative petition provided Christina with sufficient notice of the issues that would be raised at the hearing. We hold that the District Court did not err when it awarded long-term legal custody without requiring a separate petition limited to that issue.

¶22 Accordingly, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY