No. 01-408

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 4

IN THE MATTER OF T.A.G. and K.L.G.,

Youths in Need of Care.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel R. Sweeney, Attorney at Law, Butte, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Ilka Becker,

Assistant Attorney General, Helena, Montana

Ross P. Richardson; Henningsen, Vucurovich & Richardson,

Butte, Montana

Submitted on Briefs: December 6, 2001
Decided: January 15, 2002

Filed:

_____

Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 C.G. (Father) appeals from the Findings of Fact, Conclusions of Law and Order entered by the Second Judicial District Court, Silver Bow County, which terminated his parental rights to T.A.G. and K.L.G. We affirm.

¶2 The sole issue Father raises on appeal is whether the District Court erred in finding that the conduct or condition rendering him unfit is unlikely to change within a reasonable time.

## BACKGROUND

¶3 T.A.G. and K.L.G. (collectively, the children) were born on April 1, 1993 and May 5, 1994, respectively. Father's involvement with the Montana Department of Public Health and Human Services (Department) began in July of 1997, and the District Court adjudicated the children as youths in need of care on July 31, 1997. From July of 1997 until September of 1998, the children were in and out of foster care. They were again placed in foster care on September 22, 1998, and remained in foster care thereafter throughout the underlying proceedings. The children's mother ultimately relinquished her parental rights and consented to adoption. She is not involved in this appeal.

¶4 The Department prepared, and the District Court approved, seven treatment plans for Father between August 25, 1997 and November 16, 2000, all designed to address Father's admitted problems with drugs, alcohol and anger management and associated abuse and neglect issues, and to reunite him with the children. All of the treatment plans, including the last three plans which the District Court approved on January 5, 2000, July 31, 2000, and November 16, 2000, required Father to abstain from drugs and alcohol, submit to urinalysis when requested by social workers, and attend Alcoholics Anonymous (AA) meetings regularly.

¶5 The Department petitioned for Permanent Legal Custody and Termination of Parental Rights on February 26, 2001. The District Court held a hearing on the petition and,

thereafter, terminated Father's parental rights and awarded the Department permanent legal custody of the children with the right to consent to adoption. Father appeals.

## DISCUSSION

¶6 Did the District Court err in finding that Father's conduct or condition is unlikely to change within a reasonable time?

¶7 A district court may terminate parental rights under § 41-3-609(1)(f), MCA, when it finds that children have been adjudicated youths in need of care, a parent has not complied with an appropriate, court-approved treatment plan or the treatment plan has not been successful, and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(2), MCA, sets forth the factors a district court is to consider in entering findings relating to whether the parent's conduct or condition is likely to change within a reasonable time. Section 41-3-609(3), MCA, provides that, in considering the factors in subsection (2), "the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the [children]."

¶8 In this case, Father does not dispute the court's findings that the children were adjudicated youths in need of care, that he did not comply with the treatment plans and that the plans were not successful. His sole challenge is to the District Court's finding that the conduct or condition rendering him unfit to parent is unlikely to change within a reasonable time. We review a district court's findings in a parental termination case to determine whether they are clearly erroneous. *Matter of M.J.W.*, 1998 MT 142, ¶ 7, 289 Mont. 232, ¶ 7, 961 P.2d 105, ¶ 7 (citations omitted). That review requires us to determine whether the findings of fact are supported by substantial evidence, whether the trial court mis-apprehended the effect of the evidence and whether our review of the record convinces us that a mistake has been committed. *M.J.W.*, ¶ 7 (citations omitted).

¶9 Father asserts he has made very positive changes in his life, his conduct or condition is changing, and the evidence indicates it most likely will continue to change for the better. He points to evidence of the changes he has accomplished over the years in which he has been involved with the Department and the treatment plans: obtaining employment, changing friends to those more suitable to the new lifestyle he is attempting to create, completing anger management and parenting programs, and other matters. Father also relies on a plethora of testimony about the kind of parent he is: among others, his mother's testimony that he is a "very loving" parent, his therapist's testimony that he is a "very

devoted parent" and the testimony of a long-time friend that he is a good father who has a "normal, excellent relationship with his children."

¶10 There is no question that Father has made progress with positive life changes. As stated above, however, our standard in reviewing a District Court's finding of fact is whether the finding is clearly erroneous, and our starting point is whether the finding is supported by substantial evidence. *See M.J.W.*, ¶ 7. We do not substitute our judgment regarding the weight to be given to the evidence for that of the trial court; nor do we review the record to determine whether evidence would support a different finding. *Matter of J.M.J.*, 1999 MT 277, ¶ 24, 296 Mont. 510, ¶ 24, 989 P.2d 840, ¶ 24 (citations omitted). Thus, we turn to the record to determine whether substantial evidence supports the District Court's finding that the conduct or condition of Father rendering him unfit was unlikely to change within a reasonable time.

¶11 At the time Father and the children first became involved with the Department, the children were approximately three and four years old. By the time of the hearing, they were nearly seven and eight and had been in foster care continuously since September of 1998. As noted above, primary issues in all seven of Father's treatment plans were drug and alcohol use. Father admitted at the hearing that he drinks up to three or four beers on occasion, notwithstanding the treatment plans' prohibition on alcohol use. Moreover, the record reflects that during the fifth treatment plan, from December 29, 1999 through June 29, 2000, Father refused eight urinalysis requests, did not attend AA, made death threats to social workers, and refused to allow social workers into his home. He continued his use of drugs and tested positive for the same during the sixth treatment plan. During the seventh treatment plan, from November of 2000 to January of 2001, Father admitted using marijuana, did not follow through with the chemical dependency program and, indeed, was discharged from the program, and did not provide verification of AA attendance or find an AA sponsor. While these are indicia of both lack of compliance with the treatment plans and lack of success of the treatment plans, they also are indicia supporting the District Court's finding that his conduct or condition was unlikely to change within a reasonable time.

¶12 Furthermore, while Father's therapist testified that he is a "very devoted parent," her opinion was based on what she had "heard;" she had never seen Father with the children and her opinion about his devotion to the children appears to be based on his expression to her on numerous occasions of "his attachment to his daughters and wanting another chance to parent them." Thus, while the record supports Father's interest in parenting the

children, his contention that he will be able to do so within a reasonable period of time-- given their two and one-half years in foster care at the time of the hearing on the Department's petition--is not supported by the therapist's testimony or the other testimony on which Father relies.

¶13 Clinical psychological Ned Tranel (Tranel) testified at the termination hearing on March 15, 2001. He had evaluated Father in August and October of 2000. At the time of the August evaluation, it was Tranel's opinion that Father would not be able to meet a minimal standard of parenting. In addition, Father admitted to Tranel during the evaluation in October of 2000 that he did not feel capable of handling the children. At the time of the hearing, Tranel opined that Father "theoretically" could meet minimal parenting standards within a reasonable period of time, but the "chances that he could elevate his parenting abilities to a minimal standard in time, developmentally, to be beneficial to these children is highly improbable; theoretically possible but very unlikely." His opinion was based, among other things, on Father's failure to maintain sobriety and Tranel's views that Father's personality disorder had shown no improvement between August and October of 2000 and his emotional condition "actually deteriorated to some extent."

¶14 We conclude that substantial evidence supports the District Court's finding that the conduct or condition rending Father unfit is unlikely to change within a reasonable period of time and the finding is not otherwise clearly erroneous. As a result, Father has established no error in the District Court's termination of his parental rights.

¶15 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE