No. 03-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 323N

IN THE MATTER OF L.M. and N.M.,

　　　　Youths in Need of Care.

APPEAL FROM:　　District Court of the Eighth Judicial District,
　　　　　　　　In and for the County of Cascade, Cause No. ADJ-00-128-Y
　　　　　　　　The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Vince van der Hagen, Attorney at Law, Great Falls, Montana

　　　　For Respondent:

　　　　　　Hon. Mike McGrath, Attorney General; Tammy K. Plubell,
　　　　　　Assistant Attorney General, Helena, Montana

　　　　　　Brant Light, Cascade County Attorney, Great Falls, Montana

　　　　　　　　　　　Submitted on Briefs:　October 23, 2003

　　　　　　　　　　　　　　Decided:　November 25, 2003

Filed:

_____
　　　　　　　　Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2      The mother of L.M. and N.M. (Mother) appeals from the order granting a planned permanent living arrangement (PPLA) entered by the Eighth Judicial District Court, Cascade County. The restated issue on appeal is whether the District Court erred in granting a PPLA after a permanency plan hearing without receiving a separate petition and holding a separate hearing. We affirm.

## BACKGROUND

¶3      In June of 2000, the District Court granted the Department of Health and Human Services (DPHHS) temporary legal custody (TLC) of Mother's three children after an incident involving her oldest child. In July of 2000, it adjudicated the children as youths in need of care and, thereafter, held periodic review hearings. Throughout the proceedings, the parties repeatedly stipulated to extensions of the TLC so Mother could continue to participate in treatment programs.

¶4      In September of 2001, DPHHS filed a request for a permanency plan hearing, and the District Court granted the request and scheduled the hearing for October 17, 2001. It later

2

rescheduled the hearing for October 24. Prior to the hearing, the children's guardian ad litem submitted an informational report with her recommendations.

¶5 At the October hearing, DPHHS's attorney stated Mother needed to progress in her treatment before a permanency plan could be established, and Mother's counsel said she had nearly completed her treatment plan. The District Court determined the status quo should be maintained regarding L.M. and N.M. and, because Mother's oldest child had reached her majority by that time, dismissed the case insofar as it pertained to her. The District Court eventually scheduled another "review hearing and a permanency hearing" for March 20, 2002. In February of 2002, Mother moved the court for an immediate hearing. On March 13, 2002, the District Court ordered reunification of L.M. and N.M. with Mother and subsequently vacated the March 20 hearing.

¶6 Although the children were reunited with Mother, DPHHS retained TLC. The District Court held two more review hearings in May and August of 2002, ordering that the children remain with Mother and extending the TLC six months after the August hearing. In September of 2002, DPHHS removed L.M. and N.M. from Mother's home due to immediate concerns about the children's safety. The District Court eventually set a permanency hearing for January 29, 2003.

¶7 Prior to the hearing, the guardian ad litem submitted an updated report to the court. DPHHS filed a Motion to Accept Permanency Plan and Grant Planned Permanent Living Arrangement and Guardianship (Motion), together with a social worker's affidavit articulating a permanency plan and a PPLA for each child. DPHHS requested that N.M. be

3

placed with her maternal grandparents and L.M. be placed with her adult sister and brother-in-law.

¶8 A family support specialist, the DPHHS social worker, and Mother testified at the hearing. The family support specialist stated that L.M.'s adult sister and brother-in-law "ma[d]e a really good team" in caring for L.M. The social worker testified that DPHHS had offered every available service, Mother could not place her children's needs above her own, and the placements with family members were in the children's best interests and would allow the children to maintain relationships with Mother. Mother stated she was employed, felt it was "weird" that L.M.'s sister would want to raise her, and questioned N.M.'s grandmother's ability to care for her. Mother also testified she had "resolved" an incident in which she left L.M. unsupervised, and she had driven the children in a car with a dangerous offender on parole from pre-release because she feared his family might retaliate if she called the police. She admitted she could have handled a public confrontation with L.M.'s adult sister differently, but felt her home was "very safe" and would be "a good home for [L.M. and N.M.]."

¶9 The District Court entered its order on what it apparently deemed DPHHS's "petition," granting its "request" for a PPLA for each child. Mother moved the court to vacate its order, asserting it lacked jurisdiction to grant the PPLA without first receiving an actual petition from DPHHS and holding a separate hearing. The District Court denied her motion, and Mother appeals.

4

**STANDARD OF REVIEW**

¶10    We review a district court's conclusions of law for correctness. *In re Custody of T.Z.*, 2000 MT 205, ¶ 10, 300 Mont. 522, ¶ 10, 6 P.3d 960, ¶ 10.

**DISCUSSION**

¶11    Did the District Court err in granting a PPLA after a permanency plan hearing without receiving a separate petition and holding a separate hearing?

¶12    Mother contends that the statutes governing child abuse and neglect cases precluded the District Court from granting a PPLA upon DPHHS's Motion. She argues that governing statutes required a separate petition for a PPLA, and DPHHS's Motion did not equate to the requisite petition. She also argues that the District Court was required to hold a separate hearing to adjudicate the PPLA.

¶13    Section 41-3-445, MCA (2001), governs permanency plan hearings. The court's order following such a hearing must include findings about whether the permanency plan is in the child's best interests and whether DPHHS has made reasonable efforts to finalize the plan, as well as an order to DPHHS to take any additional steps necessary to effectuate the plan. Section 41-3-445(4), MCA (2001). However, § 41-3-445(5), MCA (2001), authorizes the court to enter any other order that it determines is in the child's best interests, so long as the order does not conflict with enumerated permanency options. Pursuant to § 41-3-445(6), MCA (2001), permanency options include reunification, adoption, guardianship, or a PPLA. Here, the District Court found DPHHS had made "more than reasonable efforts" to reunite the family, and the placements with family members would be in the children's best

5

interests. The District Court also allowed DPHHS to petition for guardianship of either child if and when appropriate.

¶14 Mother concedes the purpose of the hearing was for the court to approve a plan for permanent placement of her children. She further concedes that PPLAs were an option available under § 41-3-445(6), MCA (2001). Nor does she argue that § 41-3-445, MCA (2001), required a separate petition. Mother relies on other statutes to support her argument that a petition was required. For example, two other permanency options enumerated in § 41-3-445(6), MCA (2001)–adoption after a termination of parental rights and guardianship–expressly require a petition. *See* §§ 41-3-444(1) and 41-3-604, MCA (2001). In addition, § 41-3-442(2), MCA (2001), required DPHHS to petition for one of several options before the expiration of the TLC, and one option was a PPLA. Finally, when DPHHS does not petition to terminate parental rights to a child who has been in foster care for 15 of the last 22 months, it must file a petition for extension of the TLC, a PPLA, or a dismissal. *See* § 41-3-604(5), MCA (2001). Mother correctly sets forth these statutes.

¶15 The issue before us, however, boils down to whether DPHHS's Motion satisfied these statutory requirements for a petition. Stated differently, we address whether the District Court properly treated the Motion as a petition. A natural parent's right to care and custody of a child is a fundamental liberty interest that must be protected by fundamentally fair procedures at all stages of the proceedings. *In re F.M.*, 2002 MT 180, ¶ 22, 311 Mont. 35, ¶ 22, 53 P.3d 368, ¶ 22 (citation omitted). However, we "look to the substance of a motion,

6

not just its title, to identify what motion has been presented." *See In re Marriage of Holloway*, 2000 MT 104, ¶ 13, 299 Mont. 291, ¶ 13, 999 P.2d 980, ¶ 13 (citation omitted).

¶16    In its motion, DPHHS expressly requested the District Court to grant the permanency plan set forth in the social worker's affidavit and, in substance, to order a PPLA for each child. While titled a "motion," DPHHS's filing clearly was a petition for a PPLA.

¶17    In this regard, Mother argues that the "formalities required of a petition give notice of a different kind of legal proceeding and hearing than the formalities associated with a motion." She cites no authority for this contention, however. Because the appellant bears the burden of establishing error, Mother has not established error in this regard. *See Matter of M.J.W.*, 1998 MT 142, ¶ 18, 289 Mont. 232, ¶ 18, 961 P.2d 105, ¶ 18 (citation omitted).

¶18    Mother also contends that the District Court was required to hold a separate hearing, because § 41-3-445(6)(d), MCA (2001), provides that a district court must find "the evidence demonstrates by a preponderance of the evidence" that one of five situations exists before granting a PPLA. However, nothing in this language suggests that a hearing separate from the permanency plan hearing is required, and nothing in the statute precludes an interpretation that a permanency plan hearing includes a hearing on the requested relief. In fact, defense counsel asked the social worker and Mother questions about the "placement" during the permanency plan hearing and did not object to discussing the placement at that time. Because DPHHS's Motion provided sufficient notice that the District Court would hear evidence regarding the PPLA for each child, the District Court did not err in granting the PPLA without holding a separate hearing.

¶19   We hold the District Court did not err in granting a PPLA after a permanency plan

hearing without receiving a separate petition and holding a separate hearing.

¶20   Affirmed.


                                        /S/ KARLA M. GRAY

We concur:

/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON