No. 99-073

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 313

302 Mont. 466

14 P.3d 1248

IN THE MATTER OF C.D.S., S.E.S., and T.M.S.,
Youths in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick E. Kenney, Attorney at Law, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jim Wheelis,

Assistant Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Melanie Logan,

Deputy County Attorney, Billings, Montana

Damon L. Gannett, Gannett Law Firm, Billings, Montana

(Guardian ad Litem)

Submitted on Briefs: July 6, 2000
Decided: December 7, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Appellant, father of C.D.S., S.E.S., and T.M.S., appeals from the Court's Findings of Fact and Conclusions of Law issued by the Thirteenth Judicial District Court, Yellowstone County, terminating his parental rights. Appellant contends that the District Court erred when it terminated his parental rights with respect to C.D.S., S.E.S., and T.M.S. We affirm.

## BACKGROUND

¶2 Appellant father is the birth parent of C.D.S., born November 28, 1990, S.E.S., born June 26, 1992, and T.M.S., born December 5, 1993. The Department of Family Services first became involved with Appellant's family on December 11, 1992, when it received a referral alleging physical neglect of C.D.S. and S.E.S. Subsequently, on January 16, 1994, Appellant contacted the Department of Public Health and Human Services (hereinafter "DPHHS") because of concerns about the safety of his children stemming from physical arguments between himself and his wife. The State filed a Petition for Temporary Investigative Authority and Protective Services on March 18, 1994. On July 7, 1994, the District Court granted Family Services temporary custody of the children.

¶3 Six treatment plans were developed between Appellant, his wife, and DPHHS. The first two treatment plans for April 21 to June 18, 1994, and August 11 to December 16, 1994, were between DPHHS and both parents. After the second treatment plan expired, the State sought and was granted an extension of temporary custody. Subsequently, DPHHS entered separate treatment plan agreements between each parent. Appellant father and DPHHS entered treatment plans for February 10 to June 16, 1995, and August 21 to December 15, 1995. DPHHS and the mother of the children entered separate treatment plans covering the same periods.

¶4 On December 14, 1995, the State filed a Petition for Permanent Legal Custody, Termination of Parental Rights and Right to Consent for Adoption. The State contended that the parents had not complied with their treatment plans and were unfit, unwilling, or unable to give their children adequate parental care. Between July 15, 1996, and November 7, 1997, the District Court heard testimony on 11 separate occasions from 17 witnesses including the parents, psychologists and counselors, a psychiatrist, social workers from various agencies, a nutritionist, a dietician, and two physicians. The District Court entered findings of fact and conclusions of law on September 11, 1998, terminating the parental rights of both parents to C.D.S., S.E.S., and T.M.S. The father appeals.

## STANDARD OF REVIEW

¶5 In reviewing a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re P.M.,* 1998 MT 264, ¶ 12, 291 Mont. 297, ¶ 12, 967 P.2d 792, ¶ 12. In regard to the statutorily required findings of fact supporting termination, we have stated that a natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures and, therefore, the burden is on the party seeking termination to demonstrate by clear and convincing evidence that every requirement set forth in the statute has been satisfied. *In re P.M.*, ¶ 12.

## DISCUSSION

¶6 Whether the District Court erred when it terminated Appellant's parental rights with respect to C.D.S., S.E.S., and T.M.S.?

¶7 The District Court found that Appellant did not comply with his treatment plans and the treatment plans were not successful in rehabilitating him. The court also found that Appellant's conduct and lack of interest in parenting rendered him unfit, unable, or unwilling to provide his children with adequate parental care; that this conduct had not changed since DPHHS became involved with the family in 1994; and that this conduct was unlikely to change in a reasonable time. Therefore, the District Court concluded that it was in the best interests of the children to terminate the parent-child legal relationships. Appellant contends that the District Court did not fully evaluate the testimony before it when it found that his condition has not changed significantly and is unlikely to change within a reasonable time.

¶8 Section 41-3-609, MCA (1995), provides the criteria governing the termination of parental rights. This provision states, in relevant part:

(1) The court may order a termination of the parent-child legal relationship upon a finding that . . . the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶9 Appellant contends that the evidence demonstrated that he has made the changes necessary to parent his children. Appellant insists that he has resolved the physical confrontations between himself and his wife, made significant changes in the condition of his family's home and yard, and made improvements in nutrition knowledge and parenting. Appellant's appeal essentially relies upon the testimony of Dr. Ralph Yaney, a psychiatrist who examined both parents, and David Hoye, a licensed clinical psychologist who had both parents in therapy for two years. As the State correctly observes, however, the testimony of Dr. Yaney and Hoye is ambiguous and does not support a reversal of the District Court's judgment.

¶10 Appellant notes that Dr. Yaney testified that Appellant had made progress on the issues that caused DPHHS to intervene in the first place and that the two oldest children would benefit from being placed with their parents. Dr. Yaney also testified, however, that he had serious reservations about Appellant's ability to raise children on his own without the support of a "competent female beside him." With regard to the competency of Appellant's wife, Dr. Yaney had concerns about her ability to adequately parent her children given his diagnosis that she suffered from "schizoaffective disorder mixed with depression," amphetamine abuse, and posttraumatic stress disorder in remission. Dr. Yaney stated that he had serious concerns about Appellant's wife's ability to care for her youngest child and that he thought that she might be capable of managing the two older children if she stayed off of street drugs and stayed on her prescribed medication. Dr. Yaney also stated that he was generally biased towards keeping children with their parents "even if the parents are not the best parents." Dr. Yaney stated that he did not believe that Appellant had any disorders that would automatically preclude him from adequately

parenting his children, but that he did not have a "solid feel of [Appellant's] real interaction with the children." The most Dr. Yaney could promise was that as a parental team, Appellant and his wife "have a chance. I don't think I would recommend the baby, though, in that situation."

¶11 Appellant notes that Hoye, the couple's primary therapist, testified that he thought returning the older children to Appellant's home could be a catalyst for further change and that he did not believe that there were any obvious or direct dangers to the older children. Hoye also testified that if Appellant's wife did not continue to take her medication, the family would return to the angry interactions that caused Appellant to seek the intervention of DPHHS in the first place. Although Hoye recommended returning the two older children to Appellant's care, he testified that he had never witnessed any interaction between the parents and the children. Hoye also stated that he did not believe the two older children should live in Appellant's house given the condition of Appellant's house the last time he visited it. In response to whether Appellant and his wife had improved to the point that they were now effective parents, Hoye stated that he did not know.

¶12 We believe that the highly qualified nature of both Dr. Yaney's and Hoye's testimony renders their conclusions fairly ambiguous. Although both Dr. Yaney and Hoye supported returning the two older children to Appellant's care under closely supervised conditions, they both had significant reservations about Appellant's continued ability to provide adequate care. Furthermore, both Dr. Yaney and Hoye acknowledged that they had not witnessed either parent interact with their children. Neither supported returning the youngest child to Appellant's care. While we do not believe that the testimony of Dr. Yaney and Hoye would provide a sufficient basis for the termination of parental rights standing alone, other testimony submitted to the District Court does provides sufficient support for the court's findings. The existence of some conflicting or ambiguous evidence does not preclude a finding that Appellant's conduct or condition rendering him unfit to provide adequate care is unlikely to change within a reasonable time. *See In re E.W.*, 1998 MT 135, ¶ 22, 289 Mont. 190, ¶ 22, 959 P.2d 951, ¶ 22. We need not summarize the testimony of all 17 witnesses given during 11 separate hearings. Rather, we have set out a representative sampling which indicates the substantial support for the District Court's termination of Appellant's parental rights.

¶13 Shawn Hinz, a social worker with the Maternal Child Health Program, testified that Appellant's family was referred to her in October 1993 for parenting instruction. At that time, they were not receptive to instruction. Hinz made nine home visits in 1994 and eight

visits under the supervision of the Department of Family Services beginning in 1995, during which time she offered parenting instruction to both parents. Hinz testified that she had "not seen progress towards [sic] the completion of any of the parenting instruction" and that she had witnessed only intermittent change and was not sure the parents have the ability for long-term change

¶14 Linda Zermeno, a family support specialist with the Early Childhood Intervention Program, worked with the parents and the two youngest children in a parental skill-building program for children with special needs. Zermeno saw S.E.S. in the Appellant's home approximately three to four times a month from April 1994 to April 1995. Zermeno also saw T.M.S., the youngest child, beginning in June 1994. T.M.S. was removed from the home and placed in foster care at this time because T.M.S. was very developmentally delayed and had been diagnosed as suffering from failure to thrive syndrome. Zermeno testified that of the approximately 100 children with whom she has been involved, T.M.S. displayed the greatest absence of interaction with people. She also testified that the parents have not demonstrated any long-term ability to provide the level of care that T.M.S. would require. Zermeno believed that the parents' parenting skills had not changed and her concerns about the health and safety of the children had not abated.

¶15 Gayle Espeseth, a registered dietician with the Maternal Child Health Program, visited the family's home beginning in March 1994. Espeseth repeated the testimony of many other professionals who had been involved with the family that T.M.S. was usually lying alone on a dirty living room floor clad only in a diaper with a baby bottle propped in his mouth. The two older children ate on the living room floor with the family's cats. Espeseth did not witness any positive changes during the year and a half that she worked with the family.

¶16 Dr. Ned Tranel, a clinical psychologist, evaluated both parents in 1994. He stated, "I felt that the rehabilitation and raising of their level of parenting skills to an acceptable level would be a daunting task that would require . . . intense intervention, continual monitoring, and reassessment, and that the . . . long-term prognosis was very limited."

¶17 Merry Richmond, a social worker with DPHHS, represented DPHHS during its four treatment plans with Appellant. The first treatment plan covered the time period from April 21 to June 18, 1994. Richmond testified that the first treatment plan was not successful because DPHHS continued to have concerns about the health and safety of the children. The family home was in a state of disrepair due to remodeling projects, the floors

were not often vacuumed and were covered with rubber bands, screws, pennies, bottle tops, and plastic bags. There was a saw in the kitchen and five to six cars in the yard that were in various stages of disrepair with parts lying about and broken glass. The parents failed to provide adequate food, clothing, and shelter, and T.M.S. was placed in foster care because he was diagnosed with failure to thrive syndrome. The Department remained involved with the family for over two and a half years. At the end of the fourth and final treatment plan, dated August 12 to December 15, 1995, many of the initial problems persisted. Richmond testified that the health and safety of the family's house and yard continued to be a problem and that she would have significant concerns about the children living there. Richmond admitted that the parents had made some improvements, but that there had not been a significant enough change to warrant returning the children to their parents.

¶18 The District Court's finding that the State presented clear and convincing evidence that the conduct or condition of Appellant rendering him unfit was unlikely to change within a reasonable time is not clearly erroneous. Although numerous professionals attempted to aid Appellant's family, most of them testified that Appellant's conduct did not significantly change during their involvement nor did they believe it was likely to change in the future. Only Dr. Yaney and Hoye recommended that the Appellant's older children be returned to his custody, but, as mentioned above, their recommendations were highly qualified. In light of the substantial credible evidence supporting termination, our confidence in the District Court's decision is not undermined by the testimony of Dr. Yaney and Hoye. Their ambivalent testimony does not preclude a finding that Appellant's conduct or condition rendering him unfit to provide adequate care is unlikely to change within a reasonable time. *See In re E.W.,* ¶ 22. Furthermore, as the State observes, Appellant's wife has not contested the termination of her parental rights and there was no evidence which indicated that Appellant could care for the children on his own.

¶19 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART