Nos. 01-318 and 01-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 264

In the Matter of T.C. and W.C.,
Youths In Need of Care.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Daniel R. Sweeney, Attorney at Law, Butte, Montana (for Todd)

Frank Joseph, Attorney at Law, Butte, Montana (for Christie)

For Respondent:

Hon. Mike McGrath, Attorney General; Tammy K. Plubell,

Assistant Attorney General, Helena, Montana

Robert M. McCarthy, Silver Bow County Attorney, Butte, Montana

Ross Richardson, Henningson, Vucurovich & Richardson, Butte, Montana

Submitted on Briefs: September 6, 2001
Decided: December 13, 2001

Filed:

_____

Clerk


Justice Jim Regnier delivered the Opinion of the Court.

¶1 Christie and Todd appeal from the Findings of Fact, Conclusions of Law and Order of the Second Judicial District Court, Silver Bow County, terminating their parental rights with their two minor children, W.C. and T.C. The District Court treated the two youth in need of care cases as separate causes of action but held a single hearing regarding the petition for permanent custody of the children. Thus, the facts and procedural history for these two cases are identical. This opinion consolidates the appeals concerning W.C. and T.C. We reverse.

¶2 The following issues are dispositive:

¶3 1. Whether the District Court erred in terminating Christie's parental rights for violating the treatment plan?

¶4 2. Whether the District Court's decision to allow the Department of Public Health and Human Services to amend the pleadings during the termination hearing violated Christie's due process rights?

¶5 3. Whether the District Court erred in terminating Todd's parental rights under a theory of abandonment?

## BACKGROUND

¶6 W.C. and T.C. are twelve and eleven years old, respectively. Christie is their mother and Todd is their father. The parents are divorced, and Christie originally had custody of the children. On October 27, 1999, after learning that Christie was being arrested for a probation violation, the Department of Public Health and Human Services ("DPHHS") filed a petition with the District Court to investigate whether W.C. and T.C. were abused or neglected. The District Court granted the petition on a preliminary basis. A DPHHS

caseworker first placed the children with their maternal grandmother but, eventually, placed them in a foster home.

¶7 On October 30, 1999, Christie was released from jail on bond but failed to appear for a scheduled Show Cause hearing on November 18, 1999. The District Court then granted DPHHS's petition for temporary investigative authority, finding that it was in the best interest of the children to be removed from the home. Under the order, the court required Christie to complete a chemical dependancy and psychological evaluation. The court also appointed Geralyn Driscoll as the guardian ad litem for W.C. and T.C. During this time, Christie's whereabouts were unknown. In November 1999, a social worker, Patti Randall, established contact with Todd, who was living in Florida at the time.

¶8 On December 20, 1999, Christie was arrested in Bozeman, Montana. During the same month, Todd was arrested in Florida for aggravated assault and a parole violation. He remained in jail until March 2000, when the charges were dismissed. Christie was charged with misdemeanor drug possession and released on bond on January 3, 2000. On January 12, 2000, she contacted her probation officer and the DPHHS caseworker. During a meeting with her probation officer, she failed another drug test and was arrested on a parole violation.

¶9 On February 15, 2000, DPHHS filed a Petition for Temporary Legal Custody and Protective Services. Based on a stipulation between DPHHS and Christie, the court adopted an order on February 28, 2000, granting DPHHS temporary custody for six months. Three days earlier, Christie had been arrested for possessing illegal drugs and was released the following day. She left Montana but was arrested in Florida on drug charges in May 2000.

¶10 While Christie was incarcerated in Florida, DPHHS filed a Motion to Approve a Treatment Plan on May 15, 2000. A copy was faxed to Christie, but she refused to sign it. On May 17, 2000, the Second Judicial District Citizen Review Board recommended that DPHHS should terminate both parents' parental rights, based on their criminal history, the social history of the case and the children's need for permanence. On June 8, 2000, the District Court approved the treatment plan without Christie's signature. DPHHS filed a petition on August 22, 2000, to terminate Christie and Todd's parental rights for failure to comply with the treatment plan. The District Court appointed separate counsel for both parents.

¶11 The District Court held a hearing on November 15, 2000, on the permanent custody of the children. After the first witness, DPHHS moved to amend the pleadings to add a claim of abandonment. Christie's counsel objected, but the District Court allowed DPHHS to amend the pleadings.

¶12 On March 12, 2001, the District Court issued its Findings of Fact, Conclusions of Law and Order. The Court found that both Christie and Todd had abandoned the children, that the children were previously adjudicated as youth in need of care and that Christie had not complied with the treatment plan. The District Court terminated Christie and Todd's parental rights. Christie and Todd both appeal.

## STANDARD OF REVIEW

¶13 The decision to terminate parental rights is within the discretion of the trial court, and we review such a ruling for an abuse of discretion. *In re Custody of C.F.*, 2001 MT 19, ¶11, 304 Mont. 134, ¶11, 18 P.3d 1014, ¶11. We review findings of fact to determine whether they are clearly erroneous. *In re C.F.*, ¶11; *In re C.D.S.*, 2000 MT 313, ¶5, 302 Mont. 466, ¶5, 14 P.3d 1248, ¶5; *In re J.H.*, 2000 MT 11, ¶20, 298 Mont. 41, ¶20, 994 P.2d 37, ¶20. A finding of fact is clearly erroneous if substantial evidence does not support it; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re C.F.*, ¶11; *In re Custody of T.Z.*, 2000 MT 205, ¶10, 300 Mont. 522, ¶10, 6 P.3d 960, ¶10; *In re Adoption of Snyder*, 2000 MT 61, ¶10, 299 Mont. 40, ¶10, 996 P.2d 875, ¶10 (citing *In re J.N.*, 1999 MT 64, ¶11, 293 Mont. 524, ¶11, 977 P.2d 317, ¶11). As a general rule, we review a district court's conclusions of law to determine if they are correct. *In re M.J.W.*, 1998 MT 142, ¶7, 289 Mont. 232, ¶7, 961 P.2d 105, ¶7.

## ISSUE ONE

¶14 Whether the District Court erred in terminating Christie's parental rights for violating the treatment plan?

¶15 Under Montana law, a court may terminate the parent-child legal relationship upon a finding that:

> the child is an adjudicated youth in need of care and both of the following exist: (i) an appropriate treatment plan that has been approved by the court has not been

complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609(1)(f), MCA. Therefore, before a court may address the treatment plan, the court must first judge the child as a "youth in need of care." *See In re M.J.W.,* ¶11. Without such a determination, a court may not sever a parent's parental rights. *See In re M. J.W.*, ¶11.

¶16 Christie argues that the District Court erred in terminating her parental rights because W.C. and T.C. were never adjudicated as youth in need of care. Instead, the District Court simply referenced an earlier order, stating that the children were "adjudicated as abused, neglected, or dependent within the meaning of § 41-3-102, MCA, by Order of this Court dated November 1, 1999." Both parties agree, however, that the November 1, 1999, Order did not adjudicate the children as youth in need of care. That Order was only a probable cause finding and did not establish that the children were abused or neglected. *See In re M. J.W.*, ¶12. Therefore, the court's finding is plainly wrong, and it does not support a finding that the minors were youth in need of care.

¶17 The State argues that the court's Order on February 29, 2000, granting temporary custody of the children to DPHHS, implies that they were youth in need of care. In that Order, the District Court found that "continuation in the home would be contrary to the welfare of [W.C. and T.C.]." The court's Order was based on the stipulation entered into by Christie and DPHHS. The parties to the stipulation agreed to let the court give temporary legal custody of W.C. and T.C. to DPHHS but did not stipulate that W.C. or T. C. were youth in need of care.

¶18 The State contends that a stipulation by a parent that a child is a youth in need of care empowers the court to transfer legal custody from the parent to DPHHS. *See In re Custody of J.H.*, 1998 MT 128, ¶16, 289 Mont. 111, ¶16, 958 P.2d 1191, ¶16. This may be, but the parties' stipulation was not that W.C. and T.C. were youth in need of care. Furthermore, the court's adoption of the stipulation that allowed DPHHS to gain temporary custody of W.C. and T.C. does not imply that the court found the children as youth in need of care. A court may only make such a finding through an adjudicatory hearing as mandated by § 41-3-437, MCA. *See In re M.J.W.*, ¶12 (citing § 41-3-404, MCA (1997), which the Montana Legislature renumbered in October 2001 to § 41-3-437, MCA). Without such a specific adjudication, the statutory requirement is not met. *See In re M.J.W.,* ¶14.

¶19 Therefore, because W.C. and T.C. were never adjudicated as youth in need of care, we conclude that the District Court erred in terminating Christie's parental rights for violating the treatment plan.

## ISSUE TWO

¶20 Whether the District Court's decision to allow DPHHS to amend the pleadings during the termination hearing violated Christie's due process rights?

¶21 DPHHS initially brought the termination proceeding under § 41-3-609(1)(f), MCA, for failure to comply with a treatment plan. At the hearing, DPHHS moved the District Court to amend the pleadings to conform with evidence presented at the hearing by allowing it to include abandonment as a new and separate statutory basis for terminating Christie's parental rights. Christie's counsel objected for lack of notice. The District Court denied the objection and allowed DPHHS to amend the pleadings to include an allegation of abandonment. The State argues that, while DPHHS did not include abandonment as a separate ground for termination, DPHHS did plead facts in its petition that supported a claim of abandonment. According to the State, Christie and her counsel were thus on notice that DPHHS intended to present evidence that would support a theory of abandonment.

¶22 A natural parent's right to care and custody of a child is a fundamental liberty interest, which courts must protect with fundamentally fair procedures. *See In re E.W.*, 1998 MT 135, ¶12, 289 Mont. 190, ¶12, 959 P.2d 951, ¶12 (citing *In re R.B.* (1985), 217 Mont. 99, 103, 703 P.2d 846, 848). Due process requires that a party receive notice and be allowed the opportunity to be heard. *See In re A.E.* (1992), 255 Mont. 56, 62, 840 P.2d 572, 576 (citing *Byrd v. Columbia Falls Lions Club* (1979), 183 Mont. 330, 332, 599 P.2d 366, 367). Allowing a party to amend the pleadings creates a question of due process in cases where the defendant may not have had an adequate opportunity to prepare her case on the new issues raised by the amended pleadings. *See Brothers v. Surplus Tractor Parts Corp.* (1973), 161 Mont. 412, 418, 506 P.2d 1362, 1365.

¶23 Generally, a district court cannot grant leave to amend the pleadings arbitrarily or perfunctorily. *See Brothers*, 161 Mont. at 418, 506 P.2d at 1365. In assessing whether DPHHS's pleadings gave notice of the issue of abandonment, we look at DPHHS's claim as a whole and to "the reason and spirit of the allegations in ascertaining its real purpose."

*See Montanans for the Responsible Use of the School Trust v. State ex rel. Board of Land Comm'rs*, 1999 MT 263, ¶29, 296 Mont. 402, ¶29, 989 P.2d 800, ¶29 (citing *Miller v. Titeca* (1981), 192 Mont. 357, 364, 628 P.2d 670, 675). While there are occasions when we will allow a party to amend the pleadings in order for a case to proceed efficiently on the merits, we see no reason to do so here. *See Brothers*, 161 Mont. at 418, 506 P.2d at 1365.

¶24 DPHHS's petition, as a whole, did not provide sufficient notice to Christie on the charge of abandonment. In its petition, DPHHS alleged that Todd had abandoned the two children, but did not make a similar allegation against Christie. Christie first learned at the hearing that DPHHS sought to terminate her parental rights based on a theory of abandonment. While some of the facts alleged in DPHHS's petition may have been applicable to a theory of abandonment, Christie should not be required to glean from those facts which claims DPHHS could bring. We find this particularly true where DPHHS's petition asserted a claim of abandonment against Todd but not Christie. DPHHS's only reason for not mentioning abandonment as an independent theory concerning Christie was its statement at trial that it was a "technical deficiency." Such a deficiency was more than technical; it was misleading. It was DPHHS's responsibility to articulate the claims it expected to raise.

¶25 We thus conclude that the District Court erred in allowing DPHHS to amend the pleadings during the hearing to include a theory of abandonment.

## ISSUE THREE

¶26 Whether the District Court erred in terminating Todd's parental rights under a theory of abandonment?

¶27 The District Court concluded that Todd had abandoned W.C. and T.C. under § 41-3-102, MCA. In doing so, the court found that Todd "willfully surrendered physical custody of the child[ren] for a period of 6 months and during that period did not manifest . . . a firm intention to resume physical custody or to make permanent physical arrangements for the care of the child[ren.]" On this basis, the court terminated Todd's parental relationship with W.C. and T.C.

¶28 Todd maintains that the District Court's findings are in error because Todd did not have physical custody of W.C. or T.C. We agree. It is uncontested that Christie first had

custody of W.C. and T.C., and then, pursuant to the stipulation discussed above, DPHHS gained custody of the children. Without physical custody, Todd could not have "willfully surrendered" it.

¶29 The State counters that a parent need not have physical custody of a child for a court to find abandonment. We acknowledge that it is possible for a court to find that a non-custodial parent abandoned his children. *See In re M.W.* (1988), 234 Mont. 530, 534, 764 P.2d 1279, 1282 (finding that a father who had only minimal contact for several years with his child had abandoned the youth). In the case before us, however, the District Court's findings do not support such a conclusion.

¶30 Under present Montana law, a court may find a child to be abandoned under the following circumstances:

> (a) leaving a child under circumstances that make reasonable the belief that the parent does not intend to resume care of the child in the future; (b) willfully surrendering physical custody for a period of 6 months and during that period not manifesting to the child and the person having physical custody of the child a firm intention to resume physical custody or to make permanent legal arrangements for the care of the child; (c) that the parent is unknown and has been unknown for a period of 90 days and that reasonable efforts to identify and locate the parent have failed; or (d) the voluntary surrender, as defined in 40-6-402, by a parent of a newborn who is no more than 30 days old to an emergency services provider, as defined in 40-6-402.

Section 41-3-102(1), MCA.

¶31 A trial court may determine that a non-custodial father abandoned his child where the court finds that he did not intend to resume care of his child. *See In re M.W.*, 234 Mont. at 534, 764 P.2d at 1282; *In re M.J.D.* (1987), 225 Mont. 200, 205-06, 731 P.2d 937, 940. The District Court, however, did not make this finding. Instead, the court found that Todd surrendered physical custody of his children, implicating a different subsection of § 41-3-102(1), MCA. The court's finding that Todd surrendered physical custody directly contradicts the evidence.

¶32 Therefore, we conclude that the District Court erred in terminating Todd's parental rights under the court's articulated theory of abandonment.

¶33 Reversed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

Justice Jim Rice concurring in part and dissenting in part.

¶34 I concur with the Court's holdings in Issue One and Issue Two, but respectfully dissent from the holding in Issue Three.

¶35 The Court properly cites to *In re M.W.* (1988), 234 Mont. 530, 764 P.2d 1279, as authority for the proposition that a noncustodial father can be found to have abandoned his child, but the Court fails to apply the full holding of that case. In *M.W.*, the District Court terminated the parental rights of the noncustodial father under the identical statutory language that is at issue here, although the statute has since been recodified. The Court in *M.W.* noted that the required period of time for establishing abandonment under the statute, now recodified as § 41-3-102(1)(b), MCA (1999), was six months, and held that the noncustodial father's minimal contacts with the child over a three-year period clearly satisfied the six-month requirement and constituted abandonment.

¶36 Here, the District Court, relying on the identical statutory provision, found that Todd had abandoned T.C. At the time of the hearing on November 15, 2000, Todd had not seen T.C. for eight years. Understandably, T.C. was frightened at the prospect of living with Todd. In light of this evidence and the holding in *M.W.*, I would find substantial evidence supported the District Court's finding, and affirm the termination of Todd's parental rights to T.C.

/S/ JIM RICE