No. 02-104

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 265

IN THE MATTER OF A.S.,

    Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Vince Van Der Hagen, Cascade County Public Defender's Office, Great Falls, Montana

    For Respondent:

        Hon. Mike McGrath, Attorney General; Tammy K. Plubell, Assistant Attorney General, Helena, Montana

        Brant Light, Cascade County Attorney; Daniel M. Guzynski, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  May 23, 2002

Decided:  November 26, 2002

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1   The Montana State Department of Public Health and Human Services petitioned the District Court for the Eighth Judicial District in Cascade County to terminate the parental rights of S.S to his son, A.S.  Following a hearing on December 19, 2001, the District Court granted the petition.  S. S. appeals from the Findings of Fact, Conclusions of Law, and Order, issued by the District Court.  We affirm the Order of the District Court.

¶2   The sole issue on appeal is whether the District Court erred when it terminated S.S.'s parental rights.

FACTUAL AND PROCEDURAL BACKGROUND

¶3   A.S. was born on August 13, 2000. At the time of his birth his mother, D.B., and S.S., were both sixteen years old and did not live together.  On August 28, 2000, D.B. brought two week old A.S. to the hospital because he seemed "fussy" and D.B. heard a "crackling sound" when she picked him up.  A medical exam performed by Dr. Nora Gerrity and Dr. Craig Matelich revealed that A.S. had fractures to his left distal tibia, right distal femur and right proximal tibia, bilateral fractures to his pubic bones and probable fractured ribs.  The exam also revealed that the right side of A.S.'s mouth was scratched, he suffered from multiple bruises and the roof of his mouth appeared to have several burns.  Dr. Gerrity reported the incident to the Department of Public Health and Human Services (DPHHS) on August 29, 2000.

¶4   Detectives from the Great Falls Police Department interviewed D.B. and S.S. concerning the suspicious nature of A.S.'s injuries.

2

S.S. admitted that he may have injured A.S. when he squeezed him, when he shook him, or when he bounced him on his knee while watching him on August 25 and August 26 of 2000. Dr. Matelich surmised that the injuries were caused by a strong force that caused an impact injury and concluded that the fractures to A.S.'s leg and pubic bones could not have occurred in the manner described by S.S. S.S. was charged with Felony Criminal Endangerment and placed in juvenile detention on August 30, 2000, for causing the injuries sustained by A.S. Subsequently, S.S. was adjudicated a serious juvenile offender and in November 2000 he was incarcerated at Pine Hills Juvenile Detention Center until he turned 18 and placed on probation and parole until age 19. S.S. remained at Pine Hills until September of 2001 and was represented by counsel at all hearings relevant to this case.

¶5 Preliminary Temporary Investigative Authority was given to DPHHS on September 5, 2000, and A.S. was temporarily removed from his parents' care. On September 27, 2000, A.S. was adjudicated a Youth in Need of Care; it was ordered that A.S. remain in foster care and ninety-day Temporary Investigative Authority was given to DPHHS. Nan Bryant, a DPHHS social worker, assumed responsibility for A.S.'s case in September 2000. A review hearing was held on December 20, 2000, at which time the Temporary Investigative Authority and foster care placement were extended for an additional ninety-day period. In April 2001, Temporary Legal Custody of A.S. was awarded to DPHHS for six months.

3

¶6    S.S. was ordered to comply with a treatment plan prepared by DPHHS on June 13, 2001. The plan required that S.S.: 1) participate in an assessment of his parenting skills by a licensed therapist and complete parenting classes; 2) obtain a psychological evaluation from a Ph.D. level therapist and follow through with all recommendations made by the therapist; 3) obtain a chemical dependancy evaluation and complete the recommended treatment plan; 4) sign a release allowing DPHHS and Youth Court to share information concerning his probation and insure the requirements of his probation were satisfied; and 5) sign all releases necessary to facilitate his progress with the plan. The chemical dependency treatment and psychological evaluation required by the treatment plan were also conditions of S.S.'s probation and parole. Some of the services necessary to complete the goals of the treatment plan were available or could be made available at Pine Hills.

¶7    Although S.S. entered a chemical dependancy treatment program in January 2001 as a condition of his juvenile court sentence, he made little or no progress with treatment while at Pine Hills. Nor did he complete the psychological testing required by both his sentence and the treatment plan.

¶8    During his incarceration, S.S. was cited for numerous major rule violations and behavior reports which included assaulting another inmate and talking to his girlfriend in violation of his sentence. He also made graphically violent drawings which expressed hatred, contained satanic overtones, depicted death and

4

mutilation, and recited Marilyn Manson lyrics all in violation of the conditions of his sentence.

¶9 Following his release from Pine Hills in September 2001, S.S. was transferred to Adult Probation and Parole because he did not comply with the conditions of his sentence while incarcerated at Pine Hills. His parole officer informed him that if he did not comply with the terms of his probation and parole he would likely end up in Montana State Prison. He began chemical dependancy treatment at Gateway Recovery Center in October 2001. In November 2001, S.S. alleges that he attempted to contact Bryant a number of times but that his calls were never returned.

¶10 A.S. has remained in foster care since his initial hospitalization in August 2000. It is undisputed that A.S. has special health care needs and that he will require long-term medical care, physical therapy, special attention and permanency to thrive. At trial, S.S. admitted that he was unaware that his son had special needs and stunted development.

¶11 The DPHHS filed a petition to terminate S.S.'s parental rights on October 3, 2001, and a termination hearing was held on December 19, 2001. The District Court issued its Findings of Fact, Conclusions of Law, and Order, and terminated S.S.'s parental rights on December 31, 2001. The court found that the treatment plan was achievable; that S.S. failed to comply with the treatment plan; that S.S. failed to make efforts to acquaint himself with A.S.; that S.S. was unlikely to change his behavior within a reasonable time; and that A.S. required special care, stability,

consistency and permanency. The court concluded based on these findings that S.S. was unfit, unwilling, or unable to provide adequate parental care for A.S.; that DPHHS had made reasonable efforts to eliminate the need for removal of A.S. from his natural father's care but that S.S. was not likely to change in a reasonable time; and that termination of S.S.'s parental rights was in A.S.'s best interest.

## STANDARD OF REVIEW

¶12 A district court's decision to terminate parental rights is reviewed for an abuse of discretion. *In re Custody of C.F.*, 2001 MT 19, ¶ 11, 304 Mont. 134, ¶ 11, 18 P.3d 1014, ¶ 11. We review a district court's findings of fact to determine whether they are clearly erroneous. *In re Custody of C.F.*, ¶ 11. A finding of fact is clearly erroneous if substantial evidence does not support it; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re Custody of C.F.*, ¶ 11. This Court reviews a district court's conclusions of law to determine if they are correct. *In re Matter of T.C. and W.C*, 2001 MT 264, ¶ 13, 307 Mont. 244, ¶ 13, 37 P.3d 70, ¶ 13.

## DISCUSSION

¶13 A district court may terminate parental rights when: 1) the child has been adjudicated a youth in need of care; 2) it is found that the appropriate treatment has not been complied with or has not been successful; and 3) it is found that the unfit conduct or

6

condition of the parent is unlikely to change within a reasonable time.  Section 41-3-609(f), MCA.  S.S. contends that the District Court abused its discretion when it terminated his parental rights for several reasons.

¶14  First, S.S. contends that the District Court erred when it found that Bryant made reasonable efforts to prevent the need for removal of A.S. from S.S.'s parental care.  He maintains that Bryant did not contact him personally to determine his progress or assist with the treatment plan during or after his incarceration and that no evidence was presented at trial to support the District Court's finding that reasonable efforts were made.

¶15  The DPHHS is required to make reasonable efforts to reunite children with their natural parents when they have been separated by the State pursuant to § 41-3-423, MCA.

> Reasonable efforts include but are not limited to development of individual written case plans specifying state efforts to reunify families, placement in the least disruptive setting possible, provision of services pursuant to a case plan, and periodic review of each case to ensure timely progress toward reunification or permanent placement. In determining preservation or reunification services to be provided and in making reasonable efforts at providing preservation or reunification services, the child's health and safety are of paramount concern.  The court shall review the services provided by the agency.

Section 41-3-423, MCA.  Furthermore, the treatment plan required that Bryant provide resource referrals as needed or requested by S.S. and help him obtain funding for assessments and classes.

¶16  It is undisputed that a treatment plan was developed by DPHHS and that S.S. was ordered to comply with its requirements.  During S.S.'s incarceration Bryant contacted his Pine Hills case manager,

7

Karen Skalko, who told Bryant that she reviewed the court orders and the treatment plan with S.S. The record demonstrates that a psychological evaluation could have been arranged at Pine Hills and that Bryant had made financial assistance available in the event that Pine Hills was unable to cover the cost of evaluation and treatment. Pine Hills provided a chemical dependancy treatment program and anger management classes that satisfied the requirements of the treatment plan. S.S. did not take advantage of the programs at Pine Hills; he did not contact Bryant about difficulty he had achieving the goals of the plan while incarcerated; he did not ask for assistance nor did he express an interest in complying with the treatment plan; and he did not inquire about A.S. at any time. S.S. allegedly attempted to contact Bryant on a few occasions in November of 2001, but only after the termination proceedings had already begun.

¶17 We conclude that Bryant made reasonable efforts to ensure that some of the services necessary to complete the treatment plan were available to S.S. while he was incarcerated. Since he availed himself of none of these services there is no reason to suggest that he would have taken advantage of those services which he now contends were not available. The treatment plan requires active involvement and effort by the parent to achieve reunification. No such effort was demonstrated by S.S. until October 2001 despite the fact that the plan was approved in June of 2001. We conclude that the District Court did not err when it found that Bryant made reasonable efforts to provide the services necessary to prevent the

8

termination of S.S.'s parental rights pursuant to § 41-2-423, MCA, and the treatment plan.

¶18 Next, S.S. contends that the District Court erred when it found that he was unfit, unwilling, or unable to provide adequate parental care, that reasonable efforts made by protective services were not able to rehabilitate him, and that he was unlikely to change within a reasonable time. He contends that the finding was incorrect because he did not have a reasonable opportunity to achieve the goals of the treatment plan. He argues that the plan was not "achievable" because he was only given four months to complete the treatment plan and the majority of that time he spent at Pine Hills, where the tools for accomplishing the goals were not available.

¶19 The treatment plan was approved and imposed in June 2001. The record demonstrates that chemical dependancy treatment and anger management classes were available during S.S.'s entire incarceration and that he did not complete either. Bryant testified that funding for a psychological evaluation at Pine Hills was available but that S.S. made no effort to obtain an evaluation. Rather than focusing on self-improvement, S.S. refused to take advantage of the services that were available to him at Pine Hills. Finally, while S.S. began chemical dependency treatment after his release, he did not initiate the steps necessary to achieve the other goals of the treatment plan. Bryant testified that the entire program could have been completed in five to seven months. Six months passed between the time the treatment plan was ordered and the time the termination hearing was held in December of 2001.

9

S.S. did not complete a single goal of the treatment plan in that six month period.

¶20 If S.S. had utilized the resources available to him at Pine Hills he could have substantially complied with the treatment plan in the four months between the time the plan was ordered and the time DPHHS moved the court to terminate S.S.'s parental rights. If he had made an effort to comply in any way, he would be in a better position to now complain that all necessary services were not available. However, he did not. Therefore, we conclude that the District Court did not err when it found that S.S.'s treatment plan was reasonable and achievable.

¶21 Finally, S.S. contends that the District Court erred when it found that the condition rendering him unfit was unlikely to change within a reasonable time because the court did not correctly find that he was unfit at the time of trial.

¶22 This argument is without merit. In the two weeks S.S. acted as a father he demonstrated that he was unfit to provide competent parental care by inflicting serious injuries upon A.S. The evidence before the court indicated that S.S. had not done anything to improve his parenting skills between the time A.S. was removed from his care and the time of the termination hearing. Although the threat of future imprisonment led to chemical dependancy treatment, this fact alone did not require that the court find him fit to be a parent.

¶23 This Court has recognized that:

> [A] termination proceeding must necessarily include a
> judgment about the ability of the parent to care for the
> child in the future. Regrettably, we do not have a

> crystal ball to look into to make this determination, so it must, to some extent, be based on a person's past conduct. We agree with [the natural mother's] assertion that evidence of rehabilitation is germane to this determination, but do not take it so far as to establish a rule that any evidence of rehabilitation renders the District Court powerless to find future danger to the children. It is evidence to be considered by the District Court, no more, no less, and is subject to the same standard of review as any other evidence.

*Matter of C.A.R.* (1984), 214 Mont. 174, 187, 693 P.2d 1214, 1221.

¶24 A.S.'s needs are immediate and the time for S.S. to prove he is capable of being the child's father has passed. Based on his past actions, history of chemical dependancy, history of abuse and failure to comply with the treatment plan, we conclude that the District Court did not err when it concluded that the condition which made S.S. unfit to be A.S.'s father was not likely to change within a reasonable time.

¶25 The decision of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE

11