

DA 11-0399, DA 11-0400

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 307

IN THE MATTER OF:

E.M.S. and C.A.S.,

    Youths in Need of Care.

APPEAL FROM:     District Court of the Third Judicial District,
In and For the County of Deer Lodge, Cause Nos. DN 09-03 and DN 09-04
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Joslyn Hunt, Chief Appellate Defender, Helena, Montana

    For Appellee:

    Steve Bullock, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General, Helena, Montana

    Joan Borneman, Deer Lodge County Attorney; Ellen Donohue, Deputy
County Attorney, Anaconda, Montana

    Francis P. (Frank) McGee, Attorney at Law, Butte, Montana

Submitted on Briefs:  October 26, 2011

Decided:  December 6, 2011

Filed:

_____

Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     B.S. (Mother) appeals from an order of the Third Judicial District Court, Deer Lodge County, that terminates her parental rights. We affirm.

¶2     Mother raises the following issue:

¶3     *Did the District Court abuse its discretion when it terminated Mother's parental rights?*

¶4     Mother and C.S. (Father) divorced in 2001. Their union produced two minor children, E.M.S. and C.A.S. Mother originally possessed custody of the children following the divorce.

¶5     The Department of Public Health and Human Services (the Department) removed the two children from Mother in March 2005. The Department alleged that Mother had left the children for days with a 16 year-old girl. Social workers found the children in a filthy home that lacked heat or food for the children. The children themselves were filthy and emanated a strong odor.

¶6     Mother and the Department entered into a stipulation in 2006 to avoid the Department initiating termination proceedings against her. Mother agreed to transfer the children's custody to Father. The Department, in turn, ceased efforts to terminate Mother's parental rights. The District Court approved the stipulation in 2006.

¶7     The children remained in Anaconda with Father until the Department removed them in 2009. The Department removed the children due to Father possessing drugs in his home. The Department filed a petition in March 2009 for emergency protective services,

adjudication as youths in need of care, and for temporary legal custody. The District Court eventually dismissed the petition.

¶8 The Department again removed the children in October 2009, and petitioned to terminate Mother's and Father's parental rights. Mother's counsel attended the termination hearing even though Mother had not been served. The District Court dismissed the petition against Mother due to the failure of service. The District Court permitted the Department to pursue termination of the Father's rights. It granted the Department temporary legal custody. Father eventually ceased efforts to complete his treatment plan. The District Court terminated Father's parental rights in March 2011 due to his relinquishment.

¶9 The Department struggled to locate Mother while it pursued termination of Father's parental rights. It eventually located her in Utah. The Department served Mother with a petition to terminate her parental rights on February 23, 2011. The District Court held a hearing on Mother's termination in March 2011. The District Court determined that Mother willfully had surrendered custody of her children for a period of six months, and made no manifestations of intent to re-establish custody. It accordingly terminated Mother's rights in June 2011.

STANDARD OF REVIEW

¶10 We review for an abuse of discretion a district court's termination of parental rights. *In re R.M.T.*, 2011 MT 164, ¶ 26, 361 Mont. 159, 256 P.3d 935. A district court abuses its discretion when it "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice." *In re R.M.T.*, ¶ 26. The

3

State must present clear and convincing evidence that the statutory circumstances allowing the court to terminate parental rights exist. *In re R.M.T.*, ¶ 27. We review for clear error the district court's findings of fact regarding the statutory criteria. *In re R.M.T.*, ¶ 27.

DISCUSSION

¶11 *Did the District Court abuse its discretion when it terminated Mother's parental rights?*

¶12 A district court may terminate parental rights if it determines through clear and convincing evidence that the parent has abandoned her children. Section 41-3-609(1), MCA. A parent abandons her children if she willfully surrenders physical custody of them for six months, and does not manifest to the children and custodial person a clear intent to resume physical custody. Section 41-3-102(1)(a)(ii), MCA.

¶13 The District Court determined that Mother had abandoned the children. Mother transferred custody to Father in 2006 to avoid efforts by the Department to terminate her parental rights. The District Court also noted the lack of contact between Mother and the children. Mother had made no contact with the children since December 2008. She had not contacted them by mail, in person, or by telephone. Mother also sent no birthday or holiday cards. She also provided no financial support to the children during the four years before the termination. Father testified that he and the children saw Mother driving in a car in Anaconda in 2007. Father attempted to stop the car in which Mother was riding. Father testified that he tried to stop the car so that Mother could see the children. Mother waved,

4

but did not stop. Mother testified that she made attempts to establish contact. The District Court found Mother's claim incredible.

¶14 Mother contends that she could not surrender custody when she never possessed custody. *In re T.C.*, 2001 MT 264, ¶ 29, 307 Mont. 244, 37 P.3d 70. She relies exclusively on this Court's holding in *In re T.C.* The couple in *In re T.C.* were divorced. *In re T.C.*, ¶ 5. The mother always possessed custody of the children after the divorce. *In re T.C.*, ¶ 6. The Department petitioned to terminate the mother's and father's parental rights on the basis of abandonment. *In re T.C.*, ¶ 11. It specifically alleged, and the district court agreed, that father willfully had surrendered physical custody. *In re T.C.*, ¶¶ 11-12. This Court reversed. It determined that the non-custodial father could not surrender physical custody when he never possessed custody. *In re T.C.*, ¶ 29.

¶15 Mother misplaces her reliance on *In re T.C.* The father in *In re T.C.* never possessed custody. In contrast, Mother had physical custody until 2006. The Department sought to terminate her parental rights at that time. Mother avoided the Department's efforts to terminate her parental rights by agreeing to transfer physical custody to Father. Mother willfully surrendered custody to Father in 2006. More than four years elapsed between Mother's willful surrender of the children in 2006 and the termination in 2011. This period far exceeds the six months required by § 41-3-102(1)(a)(ii), MCA.

¶16 Mother likewise made no manifestation of an intent to resume custody of the children. The District Court's numerous findings regarding Mother's lack of contact with the children since 2006 catalogue her indifference. It specifically noted that Mother had made no contact

since December 2008 despite sufficient opportunity to do so. The District Court's finding on the Mother's lack of contact satisfies the second criteria for abandonment under § 41-3-102(1)(a)(ii), MCA. The District Court did not abuse its discretion when it determined that Mother abandoned her children under the circumstances.

¶17 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE

6