DA 12-0323 and DA 12-0324

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 266N

IN THE MATTER OF:

D.J. and D.J.,

    Youths in Need of Care

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause Nos. DN 11-10 & DN 11-11
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Elizabeth Thomas, Attorney at Law; Missoula, Montana

    For Appellee:

    Steve Bullock, Montana Attorney General; Kathryn F. Schulz,
Assistant Attorney General; Helena, Montana;

    Casey Emerson, Attorney at Law; Polson, Montana (for Youths)

Submitted on Briefs:  October 10, 2012

Decided:  November 20, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 B.J. (Father), the biological father of D.J.(1) and D.J.(2), appeals the orders of the Montana Twentieth Judicial District Court, Lake County, terminating his parental rights to his daughters and granting permanent legal custody to the Montana Department of Public Health and Human Services (DPHHS or the Department). We affirm.

¶3 On June 21, 2011, D.J.(1) left her home in Pablo, Montana and walked down the road to a library on the Salish Kootenai College campus. D.J.(1) asked library workers to call the police because her father had sexually assaulted her and her sister, D.J.(2). A Lake County Sheriff's officer responded to the call and, after speaking briefly with D.J.(1), the officer called Alice Phelan (Phelan), a DPHHS child protection specialist, and asked her to provide assistance.

¶4 One week later, the State filed a petition for emergency protective services for D.J.(1) and D.J.(2) and requested that they be adjudicated as youths in need of care and that DPHHS be granted temporary legal custody of both girls. The petition included a report from Phelan, recounting the girls' allegations of Father's physical and sexual abuse, the services offered to Father, and Phelan's recommendations for temporary legal custody and other temporary relief during the pendency of the proceedings. The court held a hearing on the matter, at which time the State and Father stipulated that the Department should be granted temporary legal custody of

D.J.(1) and D.J.(2).  Father's stipulation was conditioned on the State agreeing to provide supervised visitation on a regular basis to J.J., his mother (Grandmother).

¶5     Based on those stipulations and on its conclusion that "[t]here has been sufficient evidence presented to establish, by a preponderance of the evidence, that [D.J.(1) and D.J.(2) are Youths in Need of Care] as defined in MCA 41-3-102," the court entered two orders adjudicating the girls as youths in need of care and granting temporary legal custody to DPHHS.  Father later moved for an adjudicatory hearing and requested that his stipulation be withdrawn because Grandmother had not been granted sufficient visitation.  Father argued that he had never stipulated to a youth in need of care determination and that the court was required by law to hold an adjudicatory hearing for that purpose.  The Department responded, agreeing that the parties had not stipulated on the record that D.J.(1) and D.J.(2) were to be adjudicated youths in need of care and advising the court that it had no objection to the setting of a hearing and intended to file a motion to terminate Father's parental rights.  Based on these filings, the court scheduled an adjudicatory hearing.

¶6     Before the adjudicatory hearing could be held, the State filed a petition to terminate Father's parental rights to D.J.(1) and D.J.(2) after the State learned that he previously had been convicted of lewd conduct with a minor child under the age of sixteen while living in Idaho.  The State's petition argued that the court was authorized to terminate the parent-child legal relationship under § 41-3-609(1)(d), MCA, because "the father has subjected a child to an aggravated circumstance pursuant to Mont. Code. Ann. § 41-3-423(2)(a)."  Father filed a motion to dismiss the petition on the grounds that the District Court erroneously had adjudicated D.J.(1) and D.J.(2) to be youths in need of care on the basis of his stipulation to temporary legal custody,

3

and not after what he claimed was a required adjudicatory hearing. The court denied Father's motion.

¶7 On March 21, 2012, the District Court held a hearing on the State's petition for termination. Phelan testified to the reports of abuse and neglect that D.J.(1) and D.J.(2) had made and explained why the Department had concluded that Father's parental rights should be terminated. She stated that D.J.(1) and D.J.(2) were "terrified" of their father and that "their major fear is that they'll [be] reunited with him before they're adults and unable to protect themselves better."

¶8 Based on the evidence that had been presented, the court found it was in the best interests of D.J.(1) and D.J.(2) for Father's parental rights to be terminated under § 41-3-609(1)(d), MCA. The court concluded that it lawfully could terminate his parental rights without adjudicating the children as youths in need of care because it had determined that Father had subjected a child to an aggravated circumstance pursuant to § 41-3-423(2)(a), MCA. The court further concluded that it previously found the girls to have been abused or neglected and that Father's later request for an adjudicatory hearing did not nullify that finding.

¶9 Father contends that because the District Court did not adjudicate D.J.(1) and D.J.(2) as youths in need of care, the court never determined that the girls were abused or neglected as required for termination of his parental rights. Father also alleges that the State failed to provide reasonable efforts to reunite him with his children, as required by § 41-3-423(1), MCA.

¶10 We review a district court's order terminating parental rights for an abuse of discretion. *In re J.M.*, 2009 MT 332, ¶ 12, 353 Mont. 64, 218 P.3d 1213. We review the trial court's findings of fact for clear error and its conclusions of law for correctness. *In re D.B.*, 2008 MT 272, ¶ 13, 345 Mont. 225, 190 P.3d 1072.

¶11     Given his prior felony conviction for sexual contact with a child, there is no question that Father's parental rights could be terminated without adjudication of the children as youths in need of care. Although adjudication is necessary to terminate parental rights under § 41-3-609(1)(f), MCA, adjudication is not necessary to terminate parental rights under § 41-3-609(1)(d), MCA, the statute upon which the court relied in this case. That subsection of the statute only requires a predicate determination that the child is abused or neglected. *In re T.S.B.*, 2008 MT 23, ¶ 34, 341 Mont. 204, 177 P.3d 429 (citing *In re K.J.B.*, 2007 MT 216, ¶ 31, 339 Mont. 28, 168 P.3d 629).

¶12     Father's reliance on *In re T.C. & W.C.*, 2001 MT 264, 307 Mont. 244, 37 P.3d 70, is misplaced. There, we held that a stipulation allowing DPHHS to take temporary legal custody of two children did not imply that those children were youths in need of care because such a finding could only be made through an adjudicatory hearing. *In re T.C. & W.C.*, ¶ 18. That case concerned a termination hearing brought under § 41-3-609(1)(f), MCA, which, as noted, requires adjudication as a predicate to termination of parental rights. *In re T.C. & W.C.*, ¶ 21. Under § 41-3-609(1)(d), MCA, the District Court only is required to make a factual determination that the child was abused or neglected; no adjudication hearing is necessary. We review the court's factual determination for clear error.

¶13     Father's argument that the court did not determine that D.J.(1) and D.J.(2) were abused or neglected fails. Under § 41-3-442, MCA, temporary legal custody cannot be granted unless a child first is found to be abused or neglected. The District Court granted the Department temporary legal custody of the girls after Father and the State stipulated that such action was appropriate. Their stipulation was based on substantiated allegations of abuse, the sufficiency of which Father does not challenge, and encompasses the factual predicate necessary for an award

5

of temporary legal custody. Based on the stipulation and Phelan's testimony at the termination hearing, the court properly determined that D.J.(1) and D.J.(2) had been abused or neglected as a condition precedent to its order terminating Father's parental rights. *See In re T.S.B.*, ¶¶ 31-34. Although Father sought an adjudication hearing due to the State's failure to provide sufficient visitation with Grandmother, his request to withdraw his prior consent to temporary legal custody did not call into question the factual basis for the stipulation.

¶14    Finally, we reject Father's contention that the District Court committed clear error when it found that "DPHHS provided reasonable efforts to reunite [D.J.(1) and D.J.(2)] with the father . . ." prior to the termination of his parental rights. The court correctly concluded that DPHHS was not required to provide reasonable efforts to reunite Father with his daughters because Father had subjected a child to an aggravated circumstance pursuant to § 41-3-423(2)(a), MCA. After a review of the record, it is apparent that the District Court did not clearly err in finding that reasonable efforts had been provided prior to the filing of the termination petition.

¶15    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court did not abuse its discretion when it terminated Father's parental rights to D.J.(1) and D.J.(2) and granted permanent legal custody to DPHHS. The court's findings of fact are not clearly erroneous and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER

6

/S/ MICHAEL E WHEAT
/S/ JIM RICE